UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ELMER B. MAUGER, | |
| Plaintiffs, | |
| v. | Case No. 3:21-CV-190-JD-MGG |
| METROPOLITAN LIFE INSURANCE COMPANY, | |
| Defendants. | |

**OPINION AND ORDER**

Plaintiff Elmer Mauger[1] allegedly attempted to cancel his life insurance policy with Defendant Metropolitan Life Insurance Company over thirty years ago. Despite Mr. Mauger's attempt, Metropolitan Life did not cancel the policy and continuously took out loans against the cash surrender value of the policy in order to pay the policy premiums. More than thirty years later, Metropolitan Life began to send him notices that he owed money on those loans. Those notices continued despite Mr. Mauger's protests. Eventually, the insurance policy lapsed, and Metropolitan Life repaid the loan from the policy's cash balance, an allegedly taxable incident which Metropolitan Life reported to the IRS. Mr. Mauger sued Metropolitan Life, claiming breach of contract for its failure to cancel the policy, insurance bad baith in its handling of Mr. Mauger's policy, and fraud for its attempts to collect the loan used to pay Mr. Mauger's policy premiums. Metropolitan Life moved to dismiss the complaint in its entirety for failure to state a claim. For the reasons set forth below, the Court denies Metropolitan Life's motion to dismiss with regard to the Breach of Contract claim but grants its motion to dismiss with regard to

---

[1] Mr. Mauger passed away in August 2021, however his daughter and co-executor of his estate, Margaret A. Mauger-Jakelski, intends to substitute herself as the party plaintiff in place of the late Mr. Mauger. (DE 20.)

Insurance Bad Faith and Fraud claims. The Court will grant Mr. Mauger leave to amend his Fraud claim.

### A.     Factual Background

In 1974, Mr. Mauger took out a life insurance policy with Defendant Metropolitan Life Insurance Company ("MetLife") for the benefit of his then-wife, Barbara. (DE 3 at 1–2.) In 1985, after Mr. Mauger and Barbara were divorced, Mr. Mauger contacted MetLife to request that she be removed as the beneficiary to the policy. When MetLife informed him that the beneficiary could not be changed, Mr. Mauger alleges that he cancelled the policy and ceased making payments on the policy premiums. (*Id.* at 2.) Mr. Mauger alleges that unbeknownst to him, MetLife failed to cancel the policy and failed to pay him the cash surrender value of the policy. Instead, MetLife began issuing loans against the cash surrender value of the policy in order to pay the policy premiums. These loans continued until April 2019. (*Id.*)

In January 2017, MetLife mailed Mr. Mauger a "Notice of Automatic Premium Loan," at which time Mr. Mauger alleges that he first discovered that MetLife did not cancel the policy in 1985 in accordance with his instructions. (*Id.* at 2–3.) Mr. Mauger then contacted MetLife and informed it that he had previously cancelled the policy. Despite Mr. Mauger's assertions that he cancelled the policy over thirty years prior and did not authorize the issuance of loans to pay the policy premiums, MetLife continued to take out additional loans. (*Id.* at 3.) In January 2018, Mr. Mauger, through his attorney, contacted MetLife and once again informed it that he cancelled the policy thirty years prior, directed MetLife to stop all attempts to recover on the loans, and instructed MetLife that all communications to Mr. Mauger be made through his attorney.

However, Mr. Mauger alleges that MetLife continued to contact him to attempt to collect payment on the loans for another year and a half. (*Id.* at 3–4.)

In August 2019, MetLife informed Mr. Mauger that the policy had lapsed due to non-payment of the premium and that the outstanding policy loan was automatically repaid by a deduction from the policy's cash value. (*Id.* at 4.) MetLife asserted that repaying the loan in that manner constituted a taxable event and subsequently issued Mr. Mauger a 1099-R form in the sum of $19,875.02 for the year 2019 and reported that sum to the IRS as income. (*Id.* at 4, 8.)

Mr. Mauger subsequently sued MetLife in Indiana State Court alleging breach of contract, insurance bad faith, and fraud. (DE 3.) MetLife removed the case to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. (DE 1.) MetLife now moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 5.)

**B.    Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of claims for failure to state a claim upon which relief can be granted. In considering dismissal under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the Plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the Plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly,* 550 U.S. at 545. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 [internal quotations omitted].

**C.     Discussion**

Mr. Mauger alleges three claims against MetLife for failing to cancel the policy, continuing to issue loans against the value of the policy, and for reporting the loan repayment as income to the IRS. First, Mr. Mauger alleges that MetLife breached its contractual obligations to Mr. Mauger by failing to honor his directions to cancel the policy. (DE 3 at 5.) Second, Mr. Mauger alleges the tort of insurance bad faith, claiming that MetLife failed to deal in good faith by refusing to cancel the policy, by creating unauthorized policy loans, attempting to collect money to repay those loans, and by reporting a distribution of income to the IRS. (DE 3 at 6.) Last, Mr. Mauger alleges that MetLife engaged in fraud by asserting that he took loans against the cash value of the policy; asserting that he owed money on those loans; fraudulently attempting to coerce Mr. Mauger into paying the loans; and fraudulently reporting to the IRS that Mr. Mauger received a cash distribution from the policy. MetLife moves to dismiss all three counts for failure to state a claim.

**1.     *Count I—Breach of Contract***

MetLife premises its motion to dismiss Mr. Mauger's breach of contract claim on the basis that it is barred by the statute of limitations. Both parties agree that the statute of limitations on a breach of contract claim for this policy, issued in 1974, is twenty years. *See* Ind. Code § 34-11-2-11. A cause of action for breach of contract accrues when the plaintiff "knew, or in the exercise of ordinary diligence, could have discovered" that the contract had been breached. *Meisenhelder v. Zipp Exp., Inc.*, 788 N.E.2d 924, 931 (Ind. Ct. App. 2003). MetLife argues that, based on the allegations of the Complaint, Mr. Mauger's cause of action accrued in 1985 when he "knew that he did not receive the cash surrender value, and thus knew that the contract had been breached." (DE 6 at 4.) Mr. Mauger contends that the cause of action did not accrue until January 2017 when he received the Notice of Automatic Premium Loan. (DE 16 at 5.) The Court, taking all facts in the light most favorable to the Plaintiff, cannot say with certainty that Mr. Mauger "in the exercise of ordinary diligence, could have discovered" that MetLife did not cancel the policy prior to 2017, and thus denies MetLife's Motion to Dismiss with respect to Count I.

Normally, statute of limitations arguments are not appropriate for motions to dismiss. *Aldrich v. Nat'l Collegiate Athletic Ass'n*, No.1:20-CV-02310-JRS-MG, 2021 WL 4477769 at *2 (S.D. Ind. Sept. 30, 2021) (citing *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). A statute of limitations defense is appropriate "only where the allegations of the complaint set forth everything necessary to satisfy the affirmative defense." *Sidney Hillman Health Ctr. of Rochester*, 782 F.3d at 928. As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute of limitations defense, questions of timeliness are best left for summary judgment, at which point the Court may

determine compliance with the statute of limitations based on a more complete record. *Id.* The Court finds that Mr. Mauger meets that burden here.

Mr. Mauger's complaint states that "[p]rior to the Notice of Automatic Premium Loan, Mr. Mauger was unaware that the policy had not been cancelled by MetLife in accordance with Mr. Mauger's instructions." (DE 3 at 3.) Taking the factual assertions in the complaint in the light most favorable to Mr. Mauger, the Court cannot conclude that it is implausible that he did not know that MetLife failed to cancel the policy prior to 2017. MetLife contends that Mr. Mauger could have reasonably discovered the failure to cancel the policy when he was not paid the cash surrender value of the policy after cancellation. However, that is not a proper determination at this stage of the proceeding. The complaint does not facially demonstrate that Mr. Mauger, through the exercise of ordinary diligence, could have reasonably discovered MetLife's failure to cancel the policy before 2017 and the Court leaves any determination of when the statute of limitations began to toll until after the discovery phase. *See Sydney Hillman Health Ctr.*, 782 F.3d 922 at 928–29 (reversing a district court's dismissal on statute of limitation grounds because knowing when the cause of action accrued required "factual determinations not appropriately made at the pleadings stage"); *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n,* 377 F.3d 682, 688–89 (7th Cir. 2004) (reversing dismissal of a RICO claim on statute of limitations grounds because, while "at some point, no doubt, a reasonable person would have investigated whether th[e] disappointing business product was the product of fraudulent misrepresentations by the defendants . . . the complaint before [the court did] not preclude the possibility that this date was within the applicable statute of limitations'). Because it is unclear before discovery when the statute of limitations began to toll in this case, the Court denies MetLife's motion to dismiss Count I.

### 2. Count II—Insurance Bad Faith

Mr. Mauger next asserts a claim for insurance bad faith. Mr. Mauger alleges that MetLife violated its duty of good faith by failing and refusing to correct its failure to cancel the policy when requested. MetLife premises its motion to dismiss Mr. Mauger's insurance bad faith claim on three bases: that it is legally time barred, that there is no cognizable basis for insurance bad faith in this case, and that Mr. Mauger fails to allege the subjective element of dishonest purpose. The Court need not consider the timeliness or the subjective element of the fraud claim because it finds that Mr. Mauger's complaint fails to state an insurance bad faith claim under Indiana law.

The main dispute between the parties is to the scope of insurance bad faith under Indiana law. MetLife argues that the tort of insurance bad faith is limited to allegations involving denial of insurance claims. Insofar as this Court is required to conform its decision "to predict how the current Indiana Supreme Court would rule," *BMD Contractors, Inc. v. Fid. & Deposit Co. of Maryland*, 679 F.3d 643, 655 (7th Cir. 2012), as amended (July 13, 2012), the Court agrees with MetLife.

In *Erie Insurance Company v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993), the Supreme Court of Indiana recognized a duty of an insurance company to deal in good faith with its insured. While the court declined to define the precise scope of the duty, it observed that the duty included an obligation to "refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* In *Monroe Guaranty Insurance company v. Magewerks Corporation,* 829 N.E.2d 968, 967 (Ind.

2005), the Indiana Supreme Court declined to extend that duty beyond those circumstances expressed in *Hickman*.

As noted by MetLife, Mr. Mauger fails to cite any case in which an Indiana court extends the tort of insurance bad faith to a situation similar to the facts here. Indiana precedent deals overwhelmingly with cases involving alleged bad faith by insurance companies in either the appraisal or the payment on insurance claims by the insured. *Hickman* recognized that a duty of good faith was necessary in the insurance contracts because there is "easily foreseeable . . . harm that proximately results to an insured, who has a valid claim and is in need of insurance proceeds after a loss, if good faith is not exercised in determining whether to honor that claim." 622 N.E.2d at 518. In *Magewerks Corporation*, cited by Mr. Mauger, the court found that the insured did not base its bad faith claim on a dispute over coverage, and instead, based it on the insurer's "manner of handling the claim." 829 N.E.2d at 967. Neither party in *Magewerks,* provided the Indiana Supreme Court with guidance on that issue, and the court thus declined to extend the duty of good faith in the insurance context beyond those four factors recognized in *Hickman*. *Id.* at 966-67.

Regardless, this case is not similar to *Magewerks*, as Mr. Mauger does not assert any allegations regarding an insurance claim. Thus, the Court analyzes Mr. Mauger's claim under the language set forth in *Hickman*. The Court finds that the conduct at issue here is not the type of conduct with which the *Hickman* court was concerned when deciding to allow claims for insurance bad faith. The *Hickman* court was concerned with the vulnerable position of the insureds when, having suffered a loss, they are at the mercy of an insurance company to approve their claim. The court recognized at the outset that the mere existence of a contract does not give rise to the required "'special relationship' to support the imposition of a tort duty."

8

*Hickman*, 622 N.E.2d at 618. Rather, it is the "unique character" of the insurance contract which supports such a relationship. *Id.* Here, Mr. Mauger claims insurance bad faith for MetLife's failure to pay him the cash surrender value of the policy. The right to a cash surrender value is created as a matter of contract. "[A] provision in a life insurance policy granting the policyholder an absolute right to surrender the policy in return for the payment of its cash surrender value is a continuous, irrevocable offer that becomes a binding contract when accepted by the policy owner." 45 C.J.S. Insurance § 826. "Thus, when the owner of an insurance policy accepts an outstanding offer to surrender the policy in return for the payment of its cash surrender value, the insurer then has no right, option, or privilege to reject the unconditional notification of the exercise of the insured's right to accept cash surrender value, and when notified of a request for surrender in unqualified terms, the insurer's obligation to pay cash surrender value becomes a fixed and perfected obligation." *Id.*

Thus, the right to the cash surrender value is a contractual privilege. It does not invite the potential for discretionary abuse or expose the insured to any vulnerabilities similar to the appraisal of claims by insurance companies, such that a duty in tort need be imposed on the insurance company to ensure "fair play between the insurer and the insured. The cash surrender value legally becomes the property of the insured when they exercise their option to surrender the policy to the company in conformation with the contract. If the insurance company refuses to pay the value, the inured has a cause of action under contract law to recover.

Because no prior case extends the duty of insurance good faith to facts similar to this case, and because the allegations of this case do not implicate the vulnerabilities or potential for harm that concerned the Indiana Supreme Court in *Hickman*, the Court finds that Mr. Mauger does not state a plausible claim for insurance bad faith and grants MetLife's motion to dismiss

Count II. In other words, the Court predicts that the Indiana Supreme Court would not extend the tort of insurance bad faith to Mr. Mauger's claim. *See Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004) ("The duty of a federal court in a diversity suit is to predict what the state's highest court would do if presented with the identical issue.").

### 3. Count III—Fraud

In his final claim, Mr. Mauger alleges that MetLife committed fraud by asserting that Mr. Mauger took loans against the value of the policy, that Mr. Mauger owed money on those loans, by fraudulently attempting to coerce Mr. Mauger into paying the loans, and by reporting an income distribution on behalf of Mr. Mauger to the IRS. MetLife raises two arguments in support of its motion to dismiss Mr. Mauger's fraud claim. First, MetLife claims that Mr. Mauger fails to allege two elements of fraud: detrimental reliance and intent to deceive. Second, MetLife claims that Mr. Mauger's fraud claim is an impermissible repackaging of his breach of contract claim. The Court finds that Mr. Mauger need not plead every element of common law fraud to survive a motion to dismiss; however, Mr. Mauger failed to plead separate damages on his fraud claim to distinguish it from his breach of contract claim. Thus, the Court grants MetLife's motion to dismiss Count III without prejudice. The Court will grant Mr. Mauger leave to amend his complaint.

#### a. Mr. Mauger Need not Plead Every Element of Fraud

To prevail on a claim of fraud in Indiana, a plaintiff must prove "(1) a material representation of past or existing fact which (2) was untrue, (3) was made with knowledge or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied

upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 335 (Ind. 2013). Allegations of fraud or mistake are "subject to the heightened pleading requirements of Rule 9(b)." *United States ex rel. Snider v. Centers for Pain Control, Inc.*, No. 2:18-CV-210, 2021 WL 1783314 at *2 (N.D. Ind. May 5, 2021). The plaintiff must state the circumstances surrounding the fraud or mistake "with particularity," although these allegations are still bound by the standards of Rule 8(a)(2). *Id.* (citing Fed. R. Civ. P.9(b)). Rule 9(b) does not demand that the plaintiff's "theory of the case" be explained, but merely that the "who, what, when, where and how of the fraud" be described. *United States ex rel. Berowitz v. Automation Aids, Inc.* 896 F.3d 834, 839 (7th Cir. 2018). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.9(b).

      As a preliminary matter, the Court agrees with Mr. Mauger that he alleges specific instances of fraud. Namely, Mr. Mauger alleges that MetLife made assertions that Mr. Mauger took out loans to pay the policy premium; MetLife attempted to collect those loans; and MetLife reported an income distribution to the IRS on Mr. Mauger's behalf. (DE 3 at 7–8.) These allegations in the complaint are specific enough to satisfy the "who, what, when, where and how" standard for the alleged fraud. *Automation Aids, Inc.*, 896 F.3d at 839.

      MetLife argues that Count III should be dismissed because Mr. Mauger fails to plead two elements of fraud: detrimental reliance and intent to deceive. While the Court agrees that Mr. Mauger must ultimately prove these elements to prevail on a claim of fraud, Mr. Mauger does not need to specifically plead them at the outset. In *Midwest Commerce Banking Co. v. Elkhart City Centre*, the Seventh Circuit held that

> All 9(b) require[s] . . . [is] that [the Plaintiff] set forth the date and content of the statements or omissions that it claimed to be fraudulent. [The Plaintiff is] not

> required to go further and allege the facts necessary to show that the alleged fraud was actionable. That . . . would certainly entail allegations demonstrating the falsity of any representations or omissions, [the plaintiff's] reliance on the defendant's misrepresentations or omissions, and the reasonableness of that reliance. None of that was required [under rule 9(b)].

4 F.3d 521, 523–24 (7th Cir. 1993). In *Labella Winnetka, Inc. v. General Cas. Ins. Co.*, 259 F.R.D. 143, 149 (N.D. Ill. 2009), the district court rejected the defendant insurance company's argument that the plaintiff failed to satisfy Rule 9(b) because plaintiff failed to "identify any statements that induced plaintiff to act" or failed to "allege that [the plaintiff] relied on defendant's representations." The court found that the Seventh Circuit in *Midwest Commerce Banking* "explicitly rejected" any argument that, for the purposes of Rule 9(b), a "plaintiff must allege each element of common law fraud." *Id.*

In support of its argument, MetLife cites *Memory v. Kelley*, No. 1:18-CV-819-JMS, 2018 WL 2266421 (S.D. Ind. May 17, 2018), for the proposition that a district court may dismiss a complaint for failure to plead reliance. However, *Memory* dealt with a complaint in which the plaintiff alleged that he was injured by false rumors that the defendants spread about him to *others*, such that no reliance by the plaintiff was plausible, and not a situation where, as here, Mr. Mauger claims that MetLife defrauded him personally. Additionally, *Memory* does not address the standard of application for Rule 9(b) laid out by the Seventh Circuit in *Midwest Commerce Banking*. Because the weight of authority in this circuit has held that a plaintiff need not lay out every element of common law fraud in his complaint to survive a motion to dismiss, the Court declines to dismiss Count III based on insufficient pleadings.

    b.  *Mr. Mauger's Fraud Claim is an Impermissible Repackaging of his Breach of Contract Claim*

MetLife next argues that Mr. Mauger's fraud claim constitutes an impermissible repackaging of his breach of contract claim. Indiana law requires a claimant who brings both a breach of contract and a fraud claim to prove that "(1) the breaching party committed the separate and independent tort of fraud; and (2) the fraud resulted in injury distinct from that resulting from the breach." *Galveston, LLC v. Morris Invest, LLC*, No. 1:19-CV-2676-SEB, 2020 WL 5798160 at *5 (S.D. Ind. Sept. 29, 2020) (quoting *Tobin v. Ruman*, 819 N.E.2d 78, 87 (Ct. App. Ind. 2004)). While "breaches of contract will almost invariably be regarded by the complaining party as oppressive, if not outright fraudulent," the claimant must nonetheless prove the independent tort to recover punitive damages." *Tobin*, 819 N.E.2d at 86 (quoting *Epperly v. Johnson*, 734 N.E.2d 1066, 1073 (Ind. Ct. App. 2000)).

Mr. Mauger's sole argument is that the origins of his fraud claim differ from that of his breach of contract claim because MetLife committed "multiple and ongoing torts" which collectively constitute fraud. (DE 16 at 15.) Regardless of whether MetLife's actions independently constituted a separate tort of fraud, Mr. Mauger does not address the second prong of Indiana's test for when a plaintiff can sustain a fraud claim alongside a breach of contract claim. The plaintiff must demonstrate that the fraud "resulted in injury distinct from that resulting from the breach." *Tobin*, 819 N.E.2d at 87. Dismissal is appropriate where the plaintiff fails to plead a separate injury. *See Galveston, LLC,* 2020 WL 5798160 at *5 (dismissing a complaint of fraud where the fraud and breach of contract claims resulted in "identical injury"); *Fritzinger v. Angie's List, Inc.*, No. 1:12-CV-01118-JMS, 2013 WL 772864 at *2–4 (S.D. Ind. Feb. 28, 2013) (dismissing a complaint where plaintiff made "no allegation that [the] alleged deception . . . resulted in an injury different from the injury sustained from the alleged breach of contract . . .").

13

Here, Mr. Mauger fails to plead that he incurred separate damages from MetLife's alleged fraud than those incurred because of MetLife's alleged breach of contract. For his breach of contract claim, Mr. Mauger claims the following damages: MetLife's failure to pay Mr. Mauger the cash surrender value of the policy at the time of cancellation and incurrence of taxes on money for loans. (DE 3 at 5.) For his fraud claim, Mr. Mauger similarly alleges damages for expenses incurred to establish he "owes no income taxes . . . as a result of the repayment of the unauthorized loans" and requests the court enter judgment in his favor in the amount equal to the value of the policy at the time of cancellation. (DE 3 at 8.) The damages claimed are the same: that Mr. Mauger is owed the cash surrender value of the policy and that he incurred income taxes because of MetLife's actions. While Mr. Mauger also claims that his damages from the alleged fraud include a need to "protect his Veteran's Administration benefits [and] Medicaid benefits" (DE 3 at 8), the Court does not view those injuries as distinct from those resulting from the breach of contract. If Mr. Mauger had to take action to protect other benefits that may be at risk because MetLife did not cancel the policy, such damages still arise out of the breach of contract. As such, Mr. Mauger fails to plead that any alleged fraud by MetLife resulted in "injury distinct from that resulting from the breach" of contract, and the Court thus grants MetLife's motion to dismiss Count III without prejudice.

    c.    *Leave to Amend*

Mr. Mauger requests that, in the alternative, the Court grant him leave to amend his complaint pursuant to Rule 15(a). (DE 16 at 15.) Leave to amend the complaint should be "freely given when justice so requires." Fed. R. Civ. P.15(a). The Court should grant leave to amend "in the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave should be "freely given" especially when "such permission is sought after the dismissal of the first complaint. *Barr Aviation, Inc. v. Land O'Lakes Municipal Airport Commission*, 377 F.3d 682 (7th Cir. 2004). "Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim." *Id.* (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure § 1357* (2d ed. 1990)). Because it does not appear to a "certainty" that Mr. Mauger cannot state a claim, and because Mr. Mauger seeks permission after the partial dismissal of the first complaint, the Court grants Mr. Mauger leave to amend his complaint.

**D.     Conclusion**

For the reasons set forth above the Court GRANTS IN PART and DENIES IN PART Defendant MetLife's motion to dismiss (DE 5). In particular, the Court —

- DISMISSES WITH PREJUDICE Count II of the Complaint;
- DISMISSES WITHOUT PREJUDICE Count III of the Complaint, with leave to amend by March 22, 2022; and
- DENIES DISMISSAL of Count I of the Complaint.

SO ORDERED.

ENTERED: March 7, 2022

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court
